1    **WO**                                                                      NN

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Azile D. Jackson,                    )    No. CV 06-2629-PHX-EHC
                                          )
10              Plaintiff,                )    **ORDER**
                                          )
11   vs.                                  )
                                          )
12                                        )
     Michael J. Astrue, Commissioner of Social )
13   Security,                            )
                                          )
14              Defendant.                )
     _____ )

15

16        This is an appeal from the decision of the Commissioner of the Social Security

17   Administration ("SSA") to deny Azile Jackson Title II disability benefits and Title XVI

18   Supplemental Security Income benefits of the Social Security Act. (Tr. 17).

19   **I. INTRODUCTION**

20        The Administrative Law Judge ("ALJ") denied Jackson's claim for disability benefits on

21   November 8, 2005, and the Appeals Council denied review. (Dkts. 1, 10).  Pending before

22   the Court is Plaintiff's motion for summary judgment, and in the alternative, motion for

23   remand (Dkt. 12), and Defendant's cross-motion for summary judgment. (Dkt. 16).

24   **II. STANDARD OF REVIEW**

25        "The Social Security Administration's disability determination should be upheld unless

26   it contains legal error or is not supported by substantial evidence." Orn v. Astrue, 495 F.3d

27   625, 630 (9th Cir. 2007) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052

28   (9th Cir.2006); 42 U.S.C. §§ 405(g), 1383(c)(3)).  "Substantial evidence is more than a mere

scintilla but less that a preponderance." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks and citation omitted).  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." <u>Orn</u> at 630. (internal quotation marks and citations omitted).

## III.  FACTS

### A.  Education and Employment Background

Plaintiff, 45, was born on September 5, 1963. (Tr. 53, 481).  She has an eighth grade education and her past relevant work[1] includes 7.5 years as a certified nursing assistant ("CNA") and six months as an appointment scheduler. (Tr. 70, 93, 115-17).  Her alleged onset of disability is July 17, 2001. (Tr. 20, 69).

### B.  Physical Condition/Medical Treatment

The parties agree that Plaintiff suffered an industrial injury on September 26, 2000. (Dkt. 12, p.3; Dkt. 17, p. 2).  As a CNA, Jackson attempted to pick up a patient who had fallen down and, in the process, injured her back.  According to one of her treating doctors, Plaintiff has had "intermittent episodes of low back pain radiating to the left lower extremity," dating back to approximately 1997. (Tr. 194).  Although medication and physical therapy alleviated her pain after the September 2000 injury, it recurred on July 17, 2001, and she was treated at the emergency room with additional analgesics. (Tr. 194).

Since then, Plaintiff has undergone several surgeries, including a two-level lumbar spinal fusion that was completed in two separate surgical procedures, due to the complication of a deep venous blood clot, which required a thrombectomy.  She also underwent surgery because the instrumentation inserted in the fusion was painful and had to be removed.  The hardware removal was complicated by a staph infection which required further surgery.

---

[1]Past relevant work is work performed within the past 15 years, that was substantial gainful activity, and that lasted long enough to acquire sufficient ability to do the job. 20 C.F.R. § 416.960(b)(1).

**1. Treating physicians**

*a)*      ***Gary Lowery, M.D., Ph. D.***

*09/12/01* - Plaintiff's third bout of low back pain. (Tr. 195). Lumbosacral spine x-rays show straightening of the curvature, limited range of motion, and minimal hypertrophic spondylosis.[2]  (Tr. 280).

*11/20/01* - MRI shows degenerative disk disease: mild posterior disk herniation; posterior osteophyte[3] formation; and mild to moderate spinal stenosis.

*02/08/02* - Surgery for lumbar spondylosis with radiculopathy.[4]   Anterior lumbar interbody fusion L5-S1 with allograft and harvesting of right iliac crest graft at L4-S1. (Tr. 163).  Complication of vascular clot which required thrombectomy. (Tr. 181).

*03/08/02* - Surgery fusion procedure continued from February 8, 2002; posterior spinal instrumentation with fixator at L4-L5. (Tr. 163, 265).

*10/17/02* - Right hardware injection significantly reduces Plaintiff's pain. (Tr. 148).

*10/24/02* - Right lumbar hardware injection. Intact pedicle screws fixation from L4 through the sacrum. (Tr. 144).

*11/13/02* - Dr. Lowery notes "the numbness and tingling is coming back." (Tr. 171).

*02/26/03* - Injection at the L5 nerve root block. (Tr. 169).

*b)*      ***Dr. Naftaly Attias - orthopedic surgeon***

*09/02/03* - Main problem is right leg pain with diminished reflex.  Injection of L5 nerve root resulted in 100% pain relief lasting a few weeks. (Tr. 163).

*10/07/03* - Impression: Nonunion of L4-L5 and L5-S1 anterior and posterior fusion. Doctor recommends hardware removal, possible fusion with instrumentation, possible decompression of nerve roots. (Tr. 160-61).

---

[2]Spondylosis - "Outgrowth of immature bony processes from the vertebrae, reflecting the presence of degenerative disease and calcification. It includes cervical and lumbar spondylosis." (Dkt. 12, Appendix A, p. 3 (citation omitted)).

[3]Osteophyte - "A bony outgrowth or protuberance." (Dkt. 12, Appendix A, p. 3 (citation omitted)).

[4]Radiculopathy - "Disease involving a spinal nerve root . . .which may result from compression related to intervertebral disk displacement; spinal cord injuries; spinal diseases; and other conditions.  Clinical manifestations include radicular pain, weakness, and sensory loss referable to structures innervated by the involved nerve root." (Dkt. 12, Appendix A, p. 3 (citation omitted)).

*10/29/03* - Surgery - Preoperative diagnosis - 1) "Painful hardware with postoperative displacement of sacral pedicle screws [seen on x-rays]." 2) Paresthesias[5]. L4-L5, right. Doctor found "huge amount of scar tissue in the midline," removed the "posterior hardware segmental instrumentation," ascertained that the fusion was "very stable," and performed a foraminotomy plus laminotomy, L4-5, right. (Tr. 214-15).

*11/11/03* - Surgery - Admitted for emergency care: October surgery was complicated by a "[m]ethicillin-resistant Staphylococcus aureus infection of superficial back surgical wound" (Tr. 325, 393).

*06/01/04* - Plaintiff has difficulty doing anything for a prolonged period. Doctor observes her range of motion is diminished in the lumbar spine. (Tr. 412). To ascertain how disabled she is and how much work she can perform, Dr. Attias recommends a "function work capacity"[6] study. (Tr. 412).

*10/26/04* - Plaintiff has back pain daily, sometimes numbness and pain in right foot, difficulty sleeping at night, and "anxiety . . . from time to time." (Tr. 410). Doctor observes she has "marked limitation in range of motion." (Tr. 410). Plaintiff can no longer work as a nurse, and opines that, in order to ascertain "the exact parameter of what type of work she can do," she "needs the FC[7] evaluation." (Tr. 410). Her insurance, however, does not cover it. (Tr. 410).

*08/12/05* - Dr. Attias releases Plaintiff for work limited to two hours a day in seated position only; he cannot be more specific without the FAC[8] examination which has not been done. Because she is not interested in further surgical intervention, Jackson is referred to a pain specialist. (Tr. 423-25).

c)     ***Bogdan Anghel, M.D. and Brian A. Cody, M.S., PA-C***

Dr. Attias refers Plaintiff to Advanced Pain Treatment and Rehab and was evaluated on August 30, 2005. (Tr. 472-75). They assessed "[l]ow back and bilateral lower extremity radicular symptoms and myofascial/myoligamentous referred pain secondary to failed back surgery syndrome and radiculopathy." (Tr. 474). The plan includes further treatment with different pain intervention modalities. (Tr. 475).

---

[5]Paresthesia - "An abnormal sensation, such as of burning, pricking, tickling, or tingling." Stedman's Medical Dictionary 1316 (27th ed. 2000).

[6]"Function work capacity" is also referred to as "FC" and "FAC."

[7]See note 6, *supra*.

[8]See note 6, *supra*.

- 4 -

**2. Examining, non-treating physicians**

*a)*       *Dr. Keith Cunningham - SSA referral*

On December 18, 2003, Dr. Cunningham observes that Plaintiff's gait and coordination are normal but has a "reversal abnormal lordotic curvature," and "can flex forward to only 60 degrees." (Tr. 326). Jackson reports she has constant lower back pain with any prolonged walking or standing more than 20-30 minutes. She cannot bend, lift or stoop. She continues to have numbness on the top of the right foot and shin area. (Tr. 325). He concludes that "[o]verall, subjective complaints were consistent with objective findings." (Tr. 327).[9]

*b)*       *Dr. Lucia Nicla Angela McPhee - SSA referral*

On April 28, 2004, Dr. McPhee, who specializes in Physical Medicine and Rehabilitation, evaluates Plaintiff. The doctor observes some normal movements, some with marked limitations, and some with mild limitations.[10] Her diagnoses were obesity, and "[c]hronic low back pain into the right lower extremity with history of lumbar fusion, February 2002." (Tr. 380).

**3. Non-examining, non-treating medical consultants**

*04/03/03* - RFC[11] - Primary diagnosis: Status post anterior lumbar interbody fusion and posterior spinal instrumentation. Secondary diagnosis: Back pain. (Tr. 150).[12] Plaintiff partially credible. Symptoms attributable to a medically determinable impairment. Severity of symptoms consistent with the medical and nonmedical evidence.

---

[9]Dr. Cunningham assessed Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk at least 2 hours in 8-hour day; sit 6 hours in 8-hour day; climb/stoop/kneel crouch occasionally; and never crawl. (Tr. 329).

[10]She opines Plaintiff is limited to the following in an eight-hour workday: sit six hours; stand/walk less than six, but at least two hours. She can lift/carry 20 pounds occasionally, 10 pounds frequently, partially crouch with support occasionally, and climb/stoop/balance/kneel/crawl occasionally. (Tr. 380-83).

[11]Residual Functional Capacity ("RFC") is defined as what the claimant can still do despite limitations due to physical and/or mental impairments. (See Tr. 21).

[12]Exertional limitations: Lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; stand/walk and sit 6 hours out of 8-hour day; climb, balance, stoop, kneel, crouch, crawl occasionally; avoid concentrated exposure to extreme cold, wetness, humidity, hazards.

Jackson still has back pain, recovering from surgery, related to hardware with anticipated removal of hardware. (Tr. 155).

*01/07/04* - RFC - Consultant's assessment mirrors what Dr. McPhee will later list as physical restrictions,[13] and opines that although Plaintiff's symptoms were attributable to medically determinable  impairments, their severity and duration were disproportionate to the expected severity and duration on the basis of those impairments. (Tr. 335).

*05/13/04* - RFC - A non-examining medical consultant reviews Dr. McPhee's report and agrees with her opinions.[14] (Tr. 385-92).  He opines that Plaintiff is "partially credible." (Tr. 390).

## C.  Mental Condition

### 1. Examining physician - *George DeLong, Ph.D. - SSA referral*

Plaintiff was examined on October 8, 2003 for a psychiatric consultation. (Tr. 206-09).  Reportedly, Jackson was both physically abused and sexually molested.  She has a family history of mental illness on the maternal side. (Tr. 207).

The doctor observes that Plaintiff's posture when seated was unusual; she placed her left arm behind her back to provide additional support, and had a "somewhat rigid" gait. (Tr. 207).  She became tearful over the murder of her son, and "does occasionally hear her name called and has preservative thoughts particularly about the death of her son from time-to-time." (Tr. 207-08).  She does not have hallucinations, delusions, or suicidal ideation. (Tr. 208).  Dr. DeLong observes that "[o]bjectively, she appears somewhat depressed."  Plaintiff says she is depressed and sometime cries "for no reason." (Tr. 208).

Dr. DeLong's Diagnostic Impression:

Axis I      Adjustment disorder with depressive anxious mood associated with the general medical condition (chronic pain).
Axis II     Deferred.
Axis III    Orthopedic impairments of pain by report.

(Tr. 209).

Dr. DeLong observes that Jackson is "pleasant and cooperative but mildly depressed.  She is not histrionic or dramatic in her presentation but is rather quite credible in her posture and

---

[13]See note 10, *supra*.

[14]See note 10, *supra*.

gait." (Tr. 209).  He opines Plaintiff is "of normal intellectual ability, who shows deficits of attention and concentration and social judgment."[15] (Tr. 209).

**2. Non-examining physician - *James M. Campbell, M.D.***

Dr. Campbell agrees with Dr. DeLong that Jackson suffers from an affective/adjustment disorder,[16] with depressive/anxious mood.[17] (Tr. 307, 310). He concludes Plaintiff "can continue simple to detailed job with a low stress environment." (Tr. 324).

**D.  Testimony of Plaintiff**

On September, 26, 2003, the ALJ hearing was held.  Plaintiff testified that her back pain continues to get worse and the numbness in her foot persists. (Tr. 532).  Her doctors have said the pain and numbness could be from a nerve or the scar tissue. (Tr. 534).  She spends most of her time in her bedroom, alternating between sitting and lying down.  She can walk for thirty minutes, albeit very slowly. (Tr. 536).  The longest period she can withstand without lying down is approximately two hours. (Tr. 539-40).  Jackson is taking Zoloft for her depression. (Tr. 534).

---

[15]Dr. DeLong completed a state agency form: *Very good* - maintain personal appearance; *Limited but satisfactory* - follow work rules, relate to co-workers, deal with public, interact with supervisors, function independently, understand/remember/carry out simple job instructions, behave in emotionally stable manner; *Seriously limited* - use judgment, maintain attention/concentration, understand/remember/carry out complex job instructions nor detailed (but not complex) job instructions, relate predictably in social situations, demonstrate reliability; *Seriously limited to poor/none* - deal with work stresses.

[16] Defined as a "[d]isturbance of mood, accompanied by a full or partial manic or depressive syndrome . . . " (Tr. 341).

[17]He lists depressive symptoms of sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking. (Tr. 310). He describes restrictions of daily living activities (with pain); difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace, as mildly limited. (Tr. 317). Dr. Campbell opines Plaintiff was either "moderately limited" or "not significantly limited" in Understanding/Memory, Sustained Concentration/Persistence, Social Interaction, and Adaptation. (Tr. 321-22).

**E. Testimony of Vocational Expert**

Vocational expert ("VE") Dr. George J. Blueth testified that:

- Plaintiff's prior position as a CNA is semi-skilled medium exertional level work, and her position as an appointment scheduler is unskilled, sedentary work. (Tr. 541).

- an individual who is able to do unskilled, light exertional[18] work with postural limitations,[19] lower extremity limitations,[20] and a sit/stand option has job opportunities that exist in significant numbers in the national economy and in the state of Arizona. Some examples are positions as a quality control inspector, assembly worker, and cashier. (Tr. 542).

- an individual requiring more than morning and afternoon breaks of 10 to 15 minutes, with lunch break of 30 minutes to an hour would be problematic, as would absenteeism of more than once a month. (Tr. 542).

**F. ALJ's Findings**

The ALJ concluded that Jackson has the RFC to perform "light" exertional work with restrictions, including a sit/stand option. She can lift/carry no more than ten pounds on a frequent basis and twenty pounds occasionally. (Tr. 21). She is precluded from climbing, crouching, squatting, kneeling, crawling, and using her lower extremities for pushing or pulling. (Tr. 21).

The ALJ found that Plaintiff's mental impairments include an anxiety disorder and an adjustment disorder. (Tr. 22). "Based on the evidence as a whole," the ALJ found that these disorders caused "only mild limitations in her activities of daily living and in her social functioning." (Tr. 23). He noted that Plaintiff babysits her granddaughter; watches television; sings; goes shopping with her daughter; is a single parent and sole caretaker of her 16-year-old son; cooks meals by sitting in a chair; cleans the house weekly; and does laundry. (Tr. 23).

The ALJ also found that Plaintiff's mental impairments result in moderate limitations in her ability to concentrate. (Tr. 23). He observed that she watches television and movies,

---

[18]Light exertional work means lifting no more than 20 pounds occasionally and 10 pounds frequently. (See Tr. 541).

[19]No crawling, crouching, climbing, squatting, or kneeling. (Tr. 541).

[20]No "legs pushing, or pulling at foot, or leg controls." (Tr. 541).

reads books, does crossword puzzles, and plays video games; however, during her mental status examination, she "had difficulty with simple calculations but judgment and abstractions were accomplished well." (Tr. 23).  Due to her mental impairments, the ALJ concluded she was limited to doing unskilled work. (Tr. 23).

In summary, Plaintiff "has the ability to perform light exertional unskilled work with restrictions."(Tr. 23).

**IV.  ANALYSIS**

When evaluating a claim for a Period of Disability and Disability Insurance Benefits, the claimant has the burden of establishing disability.  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The ALJ must engage in a five-step evaluation pursuant to 20 C.F.R. §§ 404.1520 and 416.920 to determine whether the claimant is disabled.  In the first four steps of the analysis the claimant has the burden of demonstrating that:

1. the claimant has not engaged in substantial gainful activity since filing for benefits;

2. the claimant's alleged impairment, or combination of impairments, is sufficiently severe and meets the duration requirement;[21]

3. if a severe impairment is found, it meets or equals an impairment found in the Listing of Impairments and meets the duration requirement; if so, the claimant is disabled and the analysis ends.  If not,

4. after considering all impairments in combination and determining the claimant's Residual Functional Capacity ("RFC"), the claimant can no longer perform past relevant work.

5. If the claimant establishes Step 4, the burden shifts to the SSA to demonstrate that the claimant is not disabled and can still engage in some type of substantial gainful activity that exists in significant numbers in the national economy.  See 20 C.F.R. § 404.1560(c)(2).

---

[21]Unless the impairment is expected to result in death, the duration requirement is at least 12 months, or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

1     The ALJ found that Plaintiff meets Steps 1 and 2. (Tr. 21).  The ALJ found Jackson has

2  the following impairments, which in combination, are sufficiently severe: "chronic low back

3  pain status post work injury September of 2000, status post surgery February of 2002

4  involving fusion with hardware placement and grafting, status post surgery October of 2003

5  involving hardware removal, obesity, an adjustment disorder and an anxiety disorder." (Tr.

6  26).

7     According to the ALJ, Jackson does not meet Step 3, in that her impairments, while

8  severe, did not meet or equal those on the Listing of Impairments. (Tr. 21).

9     Proceeding to Step 4, the ALJ found Plaintiff's RFC includes the ability to perform "light"

10 exertional work[22] with restrictions including a sit/stand option. (Tr. 21).  The ALJ concluded

11 Jackson could not return to her past relevant work (Tr. 25), and at Step 5, he found she could

12 still engage in some type of substantial gainful activity that exists in significant numbers in

13 the national economy. (Tr. 25).  Thus, the ALJ concluded that Jackson is not disabled. (Tr.

14 26).

15   Plaintiff argues that the ALJ improperly rejected the opinions of the treating and

16 examining physicians; failed to properly determine Plaintiff's Mental RFC; and relied on a

17 deficient vocational opinion based on inadequate questioning of the vocational expert.  (Dkt.

18 12).

19 **A.  Opinions of Treating Physicians**

20   "By rule, the Social Security Administration favors the opinion of a treating physician

21 over non-treating physicians."  See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing

22 C.F.R. § 404.1527).  The SSA has explained that an ALJ's finding that a treating source

23 medical opinion is not well-supported by medically acceptable evidence or is inconsistent

24 with substantial evidence in the record means only that the opinion is not entitled to

25 controlling weight, not that the opinion should be rejected.  See Orn, 495 F.3d at 632 (citing

26

27     [22]Lift/carry no more than 10 pounds frequently and 20 pounds occasionally.
28 Precluded from climbing, crouching, squatting, kneeling, crawling, and using lower
extremities for pushing or pulling. (Tr. 21).

1   § 404.1527).  Treating source medical opinions are still entitled to deference and, in many

2   cases, will be entitled to the greatest weight and should be adopted, even if it does not meet

3   the test for controlling weight."  Orn, 495 F.3d at 632; see also Murray v. Heckler, 722 F.2d

4   499, 502 (9th Cir. 1983) ("If the ALJ wishes to disregard the opinion of the treating

5   physician, he or she must make findings setting forth specific, legitimate reasons for doing

6   so that are based on substantial evidence in the record.").

7       The ALJ stated twice that "no treating physician has endorsed [Plaintiff's] allegations of

8   disabling pain and limitations." (Tr. 24).  Nonetheless, in the next sentence, he observed that

9   Jackson's "treating orthopedic surgeon [Dr. Attias] indicated . . . the claimant can work about

10  2 hours a day sitting." (Tr. 24).  Taken as true, these limitations would not allow Plaintiff to

11  work, and would therefore be considered disabling pain for SSA purposes. (See Tr. 542).

12  Additionally, the ALJ's finding that Dr. Attias' opinion was based "solely on the claimant's

13  statement to him" is incorrect. (Tr. 24).  There is substantial evidence in the record to support

14  the treating physician's opinion.

15      The law in the Ninth Circuit is clear that the ALJ must defer to the treating doctor's

16  opinion, even if controverted by another doctor, unless the ALJ makes findings setting forth

17  specific, legitimate reasons for rejecting it that are based on substantial evidence in the

18  record.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Here, the ALJ gave

19  "substantial weight to the State Agency medical consultants who reviewed the claimant's file

20  . . ." His only explanation for doing so was the "great weight of the evidence of record." (Tr.

21  25).  Dr. Attias' opinion is entitled to deference, if not controlling weight.  The ALJ did not

22  set forth specific, legitimate reasons, supported by substantial evidence in the record, to reject

23  the doctor's opinion.  To the contrary, the ALJ's reasoning was cursory.

24  **B.  Opinions of Examining Physicians**

25      When an examining, non-treating physician relies on the same clinical findings and differs

26  only in his conclusions, the examining, non-treating doctor's conclusions are *not* "substantial

27  evidence." Orn 495 F.3d at 632 (emphasis added).  For it to be "substantial evidence," the

28  examining physician must provide independent clinical findings as follows: "either (1)

1   diagnoses that differ from those offered by another physician and that are supported by

2   substantial evidence; or (2) findings based on objective medical tests that the treating

3   physician has not herself considered." Id. (citations omitted).  Drs. Cunningham and McPhee

4   did not offer independent clinical findings to support their differing conclusions and therefore

5   are not deemed substantial evidence.  Dr. Attias' opinion is entitled to the greatest weight and

6   is adopted by the Court.

7   **D.  Plaintiff's Credibility**

8       "Pain of sufficient severity caused by a medically diagnosed anatomical, physiological,

9   or psychological abnormality may provide the basis for determining that a claimant is

10  disabled." Robinson v. Barnhart, 469 F.Supp.2d 793, 798 (D. Ariz. 2007) (quoting Light v.

11  Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)) (inner quotations and citations omitted).

12  "Moreover, once a claimant produces objective medical evidence of an underlying

13  impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack

14  of objective medical evidence to fully corroborate the alleged severity of pain." Robinson,

15  469 F.Supp.2d at 798 (quoting Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (inner

16  quotations, citations, and alteration omitted).

17      It is undisputed that Plaintiff has several severe impairments that cause pain.  The ALJ

18  nonetheless found that neither the severity nor the extent of her symptoms of disabling pain

19  were supported by the medical evidence. (Tr. 23).  The ALJ pointed out that the abnormal

20  clinical findings were limited to moderately reduced back range of motion, the lumbar spine

21  appeared stable in March 2005 x-rays, and "full healing and full fusion" was reflected in

22  August 2005 x-rays. He summarized that overall "abnormal clinical findings on examination

23  have been minimal," and concluded that Plaintiff's "allegations of disabling pain and

24  limitations are not fully supported." (Tr. 22).

25      Furthermore, "unless the ALJ makes a finding of malingering based on affirmative

26  evidence thereof, he or she may only find the claimant not credible by making specific

27  findings as to credibility and stating clear and convincing reasons for each. Robinson, 469

28  F.Supp.2d at 798 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883, (9th Cir. 2006)

1    (inner quotations and citation omitted).  The ALJ referred to inconsistent statements made

2    by Plaintiff to support his finding that she was "not fully credible." (Tr. 23-26).

3        First, in August 2005 Plaintiff reported to her treating physician that she could not sit at

4    a job all day long, but earlier, in April 2004, she indicated that sitting was "better tolerated"

5    than prolonged walking or standing. (Tr. 24).  These statements, however, are not

6    inconsistent.  Second, in March 2005, Plaintiff "told her doctor that she *was doing well* until

7    two months ago," according to the ALJ (Tr. 24) (emphasis added).  But the doctor's notes

8    actually indicate that she "*was doing not too bad* until about two months ago when she

9    started to have back pain that was getting progressively worse." (Tr. 435) (emphasis added).

10       Moreover, the ALJ isolated various statements from the medical records.  For instance,

11   he quoted that Plaintiff was "much, much better . . . doing well." (Tr. 24).  This notation is

12   dated March 20, 2002, shortly after the spinal fusion. (Tr. 183).  She still required pain

13   medication at that time, and more importantly, several months later she was treated with

14   spinal injections to treat the pain; two in October 2002 and one in February 2003. (Tr. 144,

15   148, 169).  In context, there is no inconsistency.

16       Furthermore, the ALJ listed various activities Plaintiff does at home which he found were

17   not inconsistent with the ability to work outside the home:  "She can sit sufficiently to read

18   books, do crossword puzzles, play video games and watch television and movies" (Tr. 24);

19   without more detail regarding the frequency with which she alternates her activities, this is

20   not necessarily at odds with her subjective complaints of disabling pain.  The ALJ's

21   observation that Jackson is "able to sing" is irrelevant, as is the assertion that her role as the

22   sole parent and caretaker of her 16-year-old son requires her to "be ready at a moment's

23   notice to take care of his needs." (Tr. 24).  (Tr. 535-37).  Her ability "to leave town for a

24   family emergency" when her brother was dying of cancer is similarly immaterial. (Tr. 24,

25   246).  Plaintiff's report that she babysits her granddaughter arguably contradicts her claim

26   of disabling pain, but without more information, such as how long she babysits and her

27   granddaughter's age, it is far from sufficient to find that her complaints of disabling pain

28   should be disregarded as not credible.

1    Because the ALJ did not make a finding of malingering, to find Jackson not credible
2    requires specific findings as to credibility and clear and convincing reasons for each.
3    However, the ALJ has not met the clear and convincing standard to support an adverse
4    credibility finding.  Given the complete record before the Court, Plaintiff's credibility does
5    not support denial of her claim.

6    Because the Court finds the treating physician's opinion of disability is controlling and
7    that Plaintiff is credible, the Court need not address Plaintiff's remaining allegations.

8    **VI. CONCLUSION**

9    The Court has reviewed the Commissioner's final decision under a substantial evidence
10   standard and finds that the decision denying benefits is not supported by substantial evidence.
11   Specifically, the ALJ made an unsupported credibility determination, gave little weight to
12   the opinions of Plaintiff's treating physician, and did not adequately assess the entire record
13   as a whole.

14   Accordingly,

15   **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 12) is granted.

16   **IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment
17   (Dkt. 16) is denied.

18   **IT IS FURTHER ORDERED** that the case is remanded for an award of benefits.

19

20   DATED this 18th day of April, 2008.

21

22

23   _Earl H Carroll_
     _____
24                    Earl H. Carroll
                 United States District Judge

25

26

27

28